## RONDINELLA v. SOUTHERN RAILWAY COMPANY.

PLEADING; SALES; CONTRACTS; WAIVER; QUESTION OF FACT.

1. Where an express contract of sale is made the subject of several counts of a declaration, and the evidence shows an unexecuted express contract, the common counts, if embodied in the declaration, will not be considered.

2. In arriving at the intent of the parties to a contract of sale, as disclosed by correspondence between them, the improbability of the vendee having intended to enter into a contract of the nature claimed by the vendor may be considered.

3. In an action for the purchase price of a blue printing machine and electric appurtenances, where the plaintiff claimed that the machine itself was sold on thirty day's approval, and had not been returned within that time, and that the electrical parts had been sold outright, the evidence, which consisted of correspondence between the parties, was reviewed and *held* to show that the contract of sale was an entire one, embracing both the machine and electrical parts.

4. Where a machine is sold subject to approval on thirty days' trial, the thirty days do not begin to run until the seller has delivered to the purchaser all the parts of the machine essential to put it in operation.

5. If the purchaser of a machine sold subject to approval and on thirty days' trial, after testing the machine, offers to return it, and the seller writes him, "If I were you, having waited so long, I would put it in operation before reaching such a decision," the seller waives the agreement for the return of the machine within the thirty days, and the purchaser then has a reasonable time thereafter within which to make other tests and accept or reject the machine.

6. While what constitutes reasonable time for the return of goods sold on approval is usually a question for the jury, yet, when the facts are all disclosed by correspondence, and there is no oral testimony from which different conclusions might be drawn, and where reasonable men could only arrive at the conclusion that it was returned within a reasonable time, and where the court would have to so instruct the jury and grant a new trial if the verdict were otherwise, the question is one for the court.

7. Where a machine is sold subject to the satisfaction of the purchaser, he is the judge of the character of the test to be given it and whether it suits him.

8. The seller of a machine shipped to a distance cannot recover the value of new parts supplied to the purchaser in place of broken parts, in the absence of evidence showing that the machine, as originally packed and shipped, was in perfect condition.

No. 1867. Submitted October 8, 1908. Decided December 1, 1908. Motion for rehearing, December 9, 1908. Rehearing granted, December 22, 1908. Reargued February 3, 1909. Decided March 3, 1909.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia upon a verdict directed by the Court, in an action for the alleged breach of a contract of sale.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal by the plaintiff, Lino F. Rondinella, from a judgment of the supreme court of the District of Columbia upon a verdict for the defendant, the Southern Railway Company, in an action in assumpsit to recover the price of an electric photographic printing machine. It appears that, in response to a request from the engineer of defendant company at Knoxville, Tennessee, for a catalogue of plaintiff's machines, plaintiff sent a circular containing, among other things, the following statement:

"Lamps and Motor are furnished for 110-volt circuit, unless otherwise ordered.

"Prices include packing and delivery f. o. b. at Philadelphia.

"Machines shipped on thirty days' trial to responsible parties, or can be shown in operation at Philadelphia or elsewhere.

"Prices on special sizes, or on partial equipment only, will be furnished by L. F. Rondinella, M. E."

With this circular was sent a supplement containing a revised price list, in which machine No. 42, with four Cooper-Hewitt vapor lamps, was quoted at $425. On the strength of the representations set forth in these circulars, the defendant sent the following order:

Knoxville, Tenn., May 1, 1906.

Mr. L. F. Rondinella, Mechanical Engineer,

728 Stephen Girard Building,

Philadelphia, Pa.

Dear Sir:—

Will you kindly send me, as quickly as possible, sale to be made subject to approval, your electric blue printing machine, which you show on your revised price list as outfit No. 42, with 4 Cooper-Hewitt vapor lamps. If the same proves satisfactory, I will send you voucher to cover cost.

Please ship by freight *via* Washington, D. C., and Southern Railway.

In sending me bill, please have it made in duplicate.

Please advise me when you will make shipment, so I can arrange for the proper current connection.

Yours truly,

W. B. Crenshaw,

Principal Ass't Engr.

To this letter, plaintiff replied as follows:

Philadelphia, Pa., May 3, 1906.

Mr. W. B. Crenshaw, Prin. Ass't Engr. Southern Railway Co.,

Knoxville, Tenn.

Dear Sir:—

I have your valued favor of the 1st inst. ordering a No. 42 Star photo-printing outfit with 4 tube Cooper-Hewitt lighting

equipment, to be paid for within thirty days after its receipt, or to be returned undamaged before the expiration of that time if it is not as represented.   I do not usually promise shipment in less than one month, but we now have most parts in stock ready for assembling and test, and I therefore expect to ship the outfit to you before the 21st inst.   Please inform me what is the normal voltage of your D. C. electric supply, with its maximum variations.

Yours very truly,<br>L. F. Rondinella.

In response, defendant wrote the following letter:

Knoxville, Tenn., May 7, 1906.

Mr. L. F. Rondinella, Mechanical Engineer,
   728 Stephen Girard Bldg.,
      Philadelphia, Pa.

Dear Sir:—

Referring to your letter of the 3d relative to the voltage for the machine ordered, the local electric office say that their direct current is normally 500 volts with a variation of 10 per cent either way.   They, however, recommend a 110-volt alternating current Cooper-Hewitt lamp, of which they say they are operating a number successfully.   I give you this information for what it is worth.   They are installing new apparatus in their power plant, so they will soon be able to cut down the 10 per cent variation.

If there is anything further, please advise me.

Yours truly,<br>W. B. Crenshaw,<br>Principal Ass't Engr.

To this, plaintiff replied:

Philadelphia, Pa., May 9, 1906.

Mr. W. B. Crenshaw, Prin. Ass't Engr. Southern Ry.,
   Knoxville, Tenn.

Dear Sir:—

The information in yours of the 7th inst. just received may

necessitate a 'rapid change' in the electric equipment I am preparing for your Star photo-printing machine which is to operate from a *direct* current supply of *110 volts* in accordance with the statements in my circular, a marked copy of which I send herewith. At the bottom of p. 2 notice that 'lamps and motor are furnished for 110 or 220 volts, *direct current,* and under the Revised Price List notice that they 'are furnished for *110 volts* circuit, unless otherwise ordered.' Your order of May 1st did not state otherwise, so the Cooper-Hewitt lamps that are to be shipped to you direct from New York and the motor will be of that voltage unless your reply (which please make immediately) advises me that you cannot supply that kind of current. I do not know of a suitable motor to operate on 500 volts direct current, and only the *short* Cooper-Hewitt tubes have been adapted to *alternating* current, but, if necessary, I can make you a special equipment of 4 Cooper-Hewitt lamps in series to operate from a 500 volt D. C. supply and a motor to operate from a different 110 volt A. C. supply. Indeed, I shipped last week an outfit with such an equipment to Watertown, N. Y., but the total cost is $5 greater, and the machine itself (whose value without motor is $225) is the only part that is regular stock and returnable. Will you therefore please reply at once with explicit statement as to which arrangement you want, and, if you desire the motor for alternating current, specify whether it has 60 or 125 phases.

;Very truly yours,

L. F. Rondinella.

Defendant answered this letter as follows:

Knoxville, Tenn., May 12, 1906.

Mr. L. F. Rondinella, Mechanical Engineer,
  728 Stephen Girard Bldg.,
      Philadelphia, Pa.

Dear Sir :—

I have your letter of the 9th relative to making changes in the outfit ordered for this office. As you suggest, I think it would

be best to arrange for the 4 Cooper-Hewitt lamps in series, and to use a 110-volt alternating current supply for the motor. I have called on the local electric light company, and they state that their alternating current is 110 volts, 60 cycle, single phase. I think the equipment to which you refer as having been furnished the Watertown, N. Y., party would be about what we would want.

> Yours truly,
> W. B. Crenshaw,
> Principal Ass't Engr.

Shortly thereafter, plaintiff notified defendant of the shipment of the machine, through the following letter:

> Philadelphia, Pa., May 22, 1906.

Mr. W. B. Crenshaw, Prin. Ass't Engr., Southern Ry. Co.
Knoxville, Tenn.
Dear Sir:—

On May 10th the Cooper-Hewitt Company shipped you four lamp tubes, on May 19th I shipped three cases containing the machine support, the tube framework, and the electric resistances and ballasts for the tubes; and this morning I shipped the last case containing the Star photo-printing machine to complete the No. 42 special outfit, in accordance with your order of May 1st and 12th. If your operator *closely follows* the typewritten instructions that I send herewith, he should have no trouble in setting up the outfit and in operating the lamps and the machine. After he has become familiar with its use, I shall be glad to know your opinion of it.

> Very truly yours,
> L. F. Rondinella.

The following bill was also sent:

728 Stephen Girard Building,
Philadelphia, May 22, 1906.
Mr. W. B. Crenshaw, Prin. Ass't Engr., Southern Ry. Co.,
Knoxville, Tenn., to L. F. Rondinella, Dr.
For your order May 1, as modified May 12, 1906, 1
    No. 42 C-Star photo-printing outfit, with special
    electric equipment ........................ $430

The above correspondence, together with the circulars, embraces the contract here sued upon.

The record discloses a long correspondence between the parties relative to parts of the machine which reached defendant in a broken condition, and a portion of the machine which the plaintiff had failed, through the negligence of his clerk, to ship in the first instance. From the correspondence, it appears that all parts of the machine were not in the hands of the defendant, in condition to assemble, until July 10th. On that date, defendant made a test of the machine, the result of which is indicated in a letter to plaintiff as follows:

Knoxville, Tenn., July 10, 1906.
Mr. L. F. Rondinella, M. E.,
    728 Stephen Girard Bldg.,
      Philadelphia, Pa.
Dear Sir:—

We have just received from the Cooper-Hewitt people the tube to replace the imperfect one relative to which we wrote them, copy of which was sent you. After this tube was placed in position we endeavored to light up the machine in accordance with directions and succeeded in doing so, the light appearing in all four tubes. The lamps burned for a period of about twenty seconds and went out. We looked the machine over thoroughly to determine a cause for this and found in one of the ballast lamps that the film had fused and in a second ballast lamp the filament had begun to melt, forming small lumps or

balls on the filament. The electrician whom we employed to set up the electrical part of the machine stated that it was no doubt due to the fact that there was not sufficient resistance. Thinking that this might be a correct assumption, it occurred to me that, in sending the set of resistances to take the place of those that were lost, the factory sent a set such as you use when using the regular type of machine, which would not be suitable for operating an outfit like the one furnished us, which has the four lamps in series. I examined the resistances and found them marked 110 volts. As you know, the voltage we are obliged to use is 500 volts.

I wish you would advise me as soon as possible what ought to be done. I do not think that any of the electrical people in this city are familiar enough with the apparatus to render a positive opinion as to what is really wrong.

Yours truly,

W. B. Crenshaw,

Principal Ass't Engr.

After a long series of correspondence, not material to this inquiry, defendant wrote plaintiff as follows:

Knoxville, Tenn., August 1, 1906.

Mr. L. F. Rondinella, M. E.,

Philadelphia, Pa.

Dear Sir:—

I hand you herewith communication from Cooper-Hewitt people with diagram for the wiring of their lamps in connection with your blue print machine. I also hand you copy of your pencil drawing which was attached to instructions for installing and operating your blue print machine with their lamps. It is now over two months since the blue print machine was received. We have reported defects to you from time to time, and there seems to be no prospect of getting the machine in shape. Please say if you desire me to box up the machine and

return it to you, or whether you will take some steps to put it in working order.

Yours truly,

W. B. Crenshaw,

Prin. Ass't Engr.

To this, plaintiff replied on August 4th, in part, as follows:

"While I regret sincerely the unusual number of accidents which has delayed the operation of your blue printing outfit, a review of our correspondence will show that I have given prompt attention to all your complaints; and a moment's thought should convince you that I, too, am anxious to make the machine operative, not only that you may be satisfied, but for the more selfish reason that I may have it accepted and paid for as soon as possible. I am surprised, therefore, at your questions as to whether I 'will take some steps to put it in working order,' to which you already have sufficient answer. If you wish to send back the returnable part of the outfit, let me know and I will send directions for shipping it to my store room; but, if I were you, having waited so long, I should put it in operation before reaching such a decision."

After another series of letters which passed between the parties, defendant wrote plaintiff, on November 10th, in part as follows:

"Mr. Hays, representing the Cooper-Hewitt Co., at your request, called upon us some time ago to determine if possible, the cause of all our trouble. As a precautionary measure, he had shipped an extra tube so that, in the event he found the trouble to be with the tubes, he would have this extra tube on hand. This extra tube, unfortunately, was of another type, and he was unable to see the machine in operation. He made a careful examination and told us that electrical connection and adjustments were properly made, from what we told him of the action of the machine while in operation, and thought we would have no further trouble. In the meantime, we ordered, as a protection against delay due to any imperfections in the tubes, a couple of tubes and two bal-

lasts from the Cooper-Hewitt Company. After these had arrived and we had gotten the machine started again, several defects in the machine developed which we feel are sufficient to show we are justified in saying that the machine does not fill the bill.

"Under the circumstances, we do not feel that the machine meets our requirements, and I have, therefore, had it carefully packed, and am returning it to you to-day, all charges prepaid."

The deposition of plaintiff, which appears in the record, follows closely the correspondence as above outlined. Plaintiff admitted the return of the machine; and, on cross-examination, admitted that he did not personally supervise the shipment of the machine or know the condition it was in when it was loaded at Philadelphia. Upon this state of facts, plaintiff rested his case, and the court, on motion of counsel for defendant, directed the jury to return a verdict for the defendant. From the judgment rendered thereon, plaintiff prosecutes this appeal.

*Mr. Charles Cowles Tucker* and *Mr. J. Miller Kenyon* for the appellant.

*Mr. George E. Hamilton, Mr. John W. Yerkes, Mr. M. J. Colbert,* and *Mr. John J. Hamilton* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The declaration contains four counts. In the first count, plaintiff sues for $225 for a certain photographic printing machine known as the "Star photo-printing machine," which sum he alleges the defendant agreed to pay or return the machine within thirty days, which he alleges was not done. In the second count, plaintiff sues for $205 for the materials sent to defendant by order of plaintiff from the Cooper-Hewitt Company; and in count three for $12 for one extra pair of bearing frames for said machine, which sale he claims was absolute, and without the option of returning by defendant. In the fourth count, he sues in common count for goods sold to defendant by

plaintiff. It is unnecessary to consider the fourth count, as the correspondence clearly establishes an express contract.

Counsel for plaintiff has, in his declaration, treated the sale as one based upon two separate contracts, as represented in the first and second counts of the declaration, respectively. It is contended that the portion of the structure embracing the cause of action in the first count was purchased on thirty days' approval; and, as defendant failed to return it within that period, its acceptance became complete and the sale executed. As to the portion of the machine—the lamps and the motor—sued for in the second count, the purchase, it is insisted, was outright, without conditions, and became an executed sale on the delivery of the lamps and motor to defendant. With these contentions, we do not agree. To ascertain the nature of the contract, it is necessary to consider the whole transaction as a unit. It cannot be conceived that defendant intended to enter into a contract for the purchase of a complete machine which, if it proved unsatisfactory, it should have the right of rescinding the contract and returning a portion of the machine, and be compelled to retain the balance, which, of necessity, must be utterly worthless to it. Of course, this circumstance cannot govern unless it is supported by the correspondence from which the contract is to be gathered; but it may be considered in connection with the correspondence in arriving at the intent of the parties as therein disclosed.

The plaintiff and the agent of the defendant never met. The transaction, in its entirety, was conducted through correspondence, all of which was placed in evidence by the plaintiff. It appears from the correspondence that defendant desired to purchase an electric blue printing machine. Its agent wrote to plaintiff for a catalogue of such a machine. In response, plaintiff sent defendant a circular and price list, quoting the No. 42 machine complete, including motor and lamps, at $425, which he proposed to sell on thirty days' approval, with right to return if unsatisfactory. Defendant, through its agent, by the letter of May 1st, accordingly ordered one of these No. 42 machines to be sent "as quickly as possible, sale to be made subject

to approval," with the further statement that, "if the same proves satisfactory, I will send you voucher to cover cost."

Some correspondence then followed as to the electrical conditions at Knoxville, Tennessee, where defendant proposed to install and use the machine. When it was found that the No. 42 machine would not meet these conditions without some changes as to the lamps and motor, plaintiff suggested a change that would remedy the difficulty. In stating in his letter of May 9th the changes that would be necessary and the additional cost of $5 that the change would incur, he included the observation that the value of the machine itself, exclusive of the lamps and motor, was $225, and that it was the only part that was regular stock and returnable. Nowhere in his circulars or his letters up to this date, had there been any intimation of the fact that the lamps and motor were not regular stock. That the negotiations were being conducted for a complete machine, and that the agent of defendant so understood it, is clearly deducible, we think, from his response of May 12th, in which he states, "I have your letter of the 9th relative to making changes in *the outfit ordered* for this office." He then suggests that he thinks the machine, with the changes proposed in plaintiff's letter of May 9th, will be about what defendant wants. He had clearly in mind the original order with these slight modifications. What was the understanding of plaintiff? In his answer of May 22d, notifying defendant of the shipment of the machine, he nowhere refers to the letter of May 9th, relating to the change, but says: "This morning I shipped the last case containing the Star photo-printing machine to complete the No. 42 special outfit, in accordance with your order of May 1st and 12th." He here positively states that he bases his authority to ship the No. 42 machine (the machine ordered by defendant on May 1st) on the order of May 1st and May 12th, when the only part of the letter of May 12th, which relates to an order at all, refers to "the outfit ordered for this office," or the order of May 1st. Hence, it will be observed that both parties treated the sale as one based upon the order of May 1st and its acceptance, and considered the letters of May 9th and May 12th as relating

only to the slight modifications made necessary in the machine to adapt it to meet the electrical conditions at Knoxville. The bill rendered by plaintiff sustains this view. It was rendered for the original machine ordered, with the modifications. If plaintiff understood the contract as now contended for by his counsel, the bill would have embraced the separate items,—the price of the lamps and motor due on shipment, and the price of the other portion of the machine due on thirty days' approval.

Treating the sale of the machine in its entirety and as a single transaction, we have here a sale of an article manufactured by the vendor to meet a condition known to him at the time, upon the express condition that the vendee purchased it subject to approval upon thirty days' trial. It is contended by plaintiff that defendant is liable for the purchase price of the machine for the reason that he failed to return it within thirty days. The record discloses a contract under which defendant reserved the right to subject the machine to a thirty-day test, and, if it proved unsatisfactory, it should be returned. The contract called for not only approval or disapproval of the machine within thirty days, but also that it should work to the satisfaction of defendant.

It will be observed from an inspection of the correspondence that all the parts of the machine were not in the possession of defendant, in condition to assemble together for operation, until July 10, 1906. The period of thirty days within which defendant should approve or return the machine cannot be held to have commenced to run until plaintiff had delivered to defendant all the parts of the machine essential to put it in shape for operation. There could be no test until all the parts were present in condition to be assembled. The letter of July 10th, and the subsequent correspondence, discloses that, after repeated tests by defendant, the machine failed to work satisfactorily, and defendant, on August 1st, so notified plaintiff, and offered to return it. Plaintiff replied, ending his letter as follows: "But, if I were you, having waited so long, I should put it in operation before reaching such a decision." The agreement for the return of the machine within thirty days was waived by

plaintiff in the above letter, and the contract was left as if no specified time for return had been stipulated. The language there employed then gave the defendant a reasonable time thereafter within which to test the machine and approve or reject it. After repeated and futile attempts to make the machine work, defendant, on November 10th, boxed up the entire outfit and shipped it to plaintiff, prepaying the freight.

We are not unmindful that the question of what constitutes reasonable time for the return of an article sold on approval is usually one for the jury; but, where the facts are all disclosed by correspondence, as in this case; where there is no oral testimony from which different conclusions or inferences might be drawn; where reasonable men could only arrive at one conclusion, namely, that defendant, up to the date of the return of the machine, at the suggestion of the plaintiff, was making every effort to get the machine to perform its work; and where the court would have to so instruct the jury and grant a new trial if the verdict was otherwise than in response to such instructions, it is the duty of the court to peremptorily direct a verdict, as was done here.

We have, therefore, a conditional sale upon an express agreement that the vendee should have thirty days within which to test and approve or disapprove the machine. Within the thirty day limitation, or within a reasonable time after its waiver, the controlling condition of this contract was that the machine must be approved by defendant and work to its satisfaction. The language used in defendant's letter of May 1st, ordering the machine, reserved to itself the sole right to pass upon its fitness to perform the work for which plaintiff had recommended it. Defendant did not subsequently waive this right. There is no law to prevent persons from making contracts wherein the purchaser stipulates that the thing purchased shall work to his satisfaction. Courts should not hesitate to enforce such conditions. The vendee, relying on the representations of the vendor, may reserve to himself, and not to a third person, the right to say whether these representations have been fulfilled. Mr. Justice Brown, in the case of *Campbell Printing Press Co.* v. *Thorp,* 1

L.R.A. 645, 36 Fed. 414, said: "When, in common language, we speak of making a thing satisfactory, we mean it shall be satisfactory to the person to whom we furnish it. It would be nonsense to say that it should be satisfactory to the vendor. It would be indefinite to say that it should be satisfactory to a third person, without designating the person. It can only be intended that it shall be satisfactory to the person who is himself interested in its satisfactory operation, and that is the vendee."

Plaintiff here assumed the obligation of furnishing a machine that would be satisfactory to defendant. The sole question of determining the fitness of the thing to perform its work was left to the judgment of the defendant. All that was required of defendant was that the machine be given a trial, which was done. We are not concerned with the wisdom or the folly of the plaintiff in making such a contract. The extent of the test to which the machine was to be subjected in order to meet the degree of perfection which the defendant thought ought to be attained, and the action of the defendant in rejecting the machine and returning it to plaintiff, were matters left by the express terms of the contract to defendant. There was nothing to be left to the judgment of a third party, hence, nothing for the jury to determine. As to the first and second counts, there can be no recovery by the plaintiff.

As to the third count, it was the duty of the plaintiff to furnish a machine complete, f. o. b. Philadelphia. When the machine reached defendant at Knoxville, one of the bearings was broken; and, to supply the pair, of which the broken one was part, a new pair was sent. This forms the cause of action upon which this count is based. There is no proof that the bearing was broken in transit. There is likewise no proof that the bearing was in perfect condition when delivered to the railroad company at Philadelphia. It was incumbent upon the plaintiff to so deliver all parts of the machine, packed in such manner as to insure safe transit to destination, barring unforeseen accidents. In the absence of proof that the bearing was in perfect condition when turned over to the carrier for shipment,

it cannot be presumed that it was in such perfect condition, that it was properly packed, and that it was broken in transit.   In fact, plaintiff himself furnishes the only evidence appearing in the record on this point where he testifies, "that he did not personally see the machine shipped or loaded; he trusted that to the clerk; that he does not know what condition the shipment was in when loaded at Philadelphia; that he did not know anything about it after it was sent to the station."   Clearly, plaintiff cannot recover on the third count.

On the face of the record, there was no error in the court taking the case from the jury and instructing a verdict for the defendant.   The judgment is affirmed with costs, and it is so ordered.                                   *Affirmed.*